# Holmes *v.* Richards.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Vendor's lien ; when purchaser cannot resist, on account of defect in title.* A purchaser of land under an executory contract, having expressly stipulated for a postponement of payment of the purchase-money until the termination of a pending suit involving his vendor's title, and for a rescission of the contract "if said litigation terminate unfavorably to the interest of R." (vendor), "so that he cannot make good and valid titles to said lot ;" and having received possession under the contract, and still retaining it,—cannot resist a bill to enforce payment of the purchase-money, on account of the defect in the vendor's title, or his inability to comply with the terms of the contract, when it appears that the suit was decided in favor of his vendor, on the ground that the adverse party, having been adjudicated a bankrupt, could not assert any right under the contract alleged by him, and the assignee in bankruptcy has become barred by the lapse of time.

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 8th May, 1878, by Evan G. Richards, against John A. Holmes and J. J. Mc-Lemore and wife ; and sought to enforce a vendor's lien for

(37)

the unpaid purchase-money of a house and lot in the town of La Fayette in said county, or a one-third interest therein, sold by said Richards to said Holmes by a contract made and entered into between them on the 8th December, 1873. By the terms of the contract of sale, Holmes paid $20 in cash, and executed his promissory note for $260, payable to said Richards on the 1st December, 1874 ; and Richards executed and delivered to Holmes his bond for title, in the usual form, conditioned to make, or cause to be made, " to said Holmes, his heirs or assigns, good and valid titles to said third interest in said lot, on the full payment of said note. At the same time, and as a part of the same contract, the parties both signed another writing, which recited the execution of the note and bond for title, and contained the following additional stipulations : "And whereas said one-third interest of said lot is now in litigation between said Richards and Benjamin F. Rea, now it is agreed, as a part of the consideration of said sale and purchase, that if said litigation should not be settled or determinated before the first day of December, 1874, that the payment of said note of $260 is to be postponed until said litigation about said lot is settled or determined ; but said note is to draw interest from maturity, till paid. Bt it is further agreed, that if said litigation terminate unfavorably to the interest of said Richards, so that he cannot be able to make good and valid titles to said one-third interest in said lot ; then, and in that case, said contract of sale and purchase is to be void ; said Richards paying back to said Holmes the said twenty dollars, without interest, and delivering up said note ; and said Holmes delivering up the possession of said one-third interest, free of rent for the time occupied. Signed in duplicate," &c. McLemore and wife were joined as defendants, on an allegation that Holmes had sold and conveyed the lot to them, and that they were in possession when the bill was filed.

In the Chancery suit of Rea against Richards, mentioned in the writing above set out, the bill was filed by Rea on the 7th June, 1873, and sought to enforce the specific performance of a contract, by which, as alleged, said E. G. Richards sold to Rea, as trustee for his wife, an undivided one-third interest in said house and lot, and, the purchase-money having been paid in full, to compel the execution of a conveyance.

On final hearing, on pleadings and proof, on that case, in March, 1874, the Chancellor dismissed the bill, on the ground that, as stated in his decree, "that equity does not require a specific performance of the contract, as the proof shows it to be ;" and his decree was affirmed by this court on appeal, during its December term, 1876, on the ground that the right

to enforce the alleged contract, if any was shown, had passed to the assignee in bankruptcy of said Rea, who had been adjudicated a bankrupt before the filing of his bill.—See the report of the case in 56 Ala. 396. The bill in this case alleged that, after the termination of that litigation by the decision of the Supreme Court, the complainant tendered a deed, with full covenants of warranty, to the defendant Holmes, and demanded payment of his note for the purchase-money ; and that said defendant refused to pay the note, and continued in the possession of the house and lot until he sold and conveyed to McLemore and wife. There was no dispute as to the terms of the contract between the parties, as shown by the writings executed by and between them ; but Holmes, in his answer, insisted that the decision of the chancery suit in favor of Richards did not give him a good title to the house and lot, such as the contract between the parties contemplated, but only determined that, if Rea ever had any cause of action, it had passed to his assignee in bankruptcy, who was not a party to that suit ; that Richards in fact had no valid title to the interest in the house and lot which he contracted to sell and convey, and that said interest really belonged to a railroad company, of which Richards was president and attorney. The facts shown by the record, in reference to these matters, are not material as the case is here presented. Holmes incorporated in his answer a demurrer to the bill for want of equity, and prayed that answer might be taken as a cross-bill, asking a rescission of the contract between him and Richards, a cancellation of the note, &c.

The Chancellor overruled the demurrer to the bill, and on final hearing on pleadings and proof, dismissed the cross-bill, and rendered a decree for the complainant ; and his decree is now assigned as error.

DOWDELL & HOLMES, for appellant.

E. G. RICHARDS, *pro se, contra.*

BRICKELL, C. J.—The agreement between Richards and Holmes stipulated and appointed the contingency, on the happening of which the contract of sale was to be rescinded, and the parties placed *in statu quo.* That contingency has not occurred, and it is now legally impossible that it can ever occur. If there was a valid executory agreement of sale made by Richards with Rea, by the terms of which Rea acquired an equitable title to Richard's estate in the premises, on Rea's bankruptcy, all right to enforce the agreement vested in his assignee. The right of enforcing it the assignee has long since lost by the lapse of time. The suit instituted by

[Ogletree v. McQuaggs et al.]

Rea, referred to in the agreement, was determined adversely to him ; and the agreement with him is not now an incumbrance or cloud on Richard's title. It was only in reference to that suit, and its termination adversely to Richards, supporting the equity claimed by Rea, that Holmes stipulated to be relieved, or Richards consented to relieve him from liability to pay the purchase-money. That event not having happened, there is no equity in his claim to a rescission of the contract of purchase.

Taking the case in all its aspects, it is the one of not infrequent occurrence, a vendee in possession, enjoying all the benefits of the contract of purchase, and yet seeking to escape its obligations, by disputing the title of his vendor. There was no fraud practiced on the vendee. He was fully informed of the nature and character of the vendor's title. It was that title, when the particular incumbrance, or cloud, to which the agreement refers, was removed, he contracted to purchase, and was satisfied to acquire. Against that incumbrance or cloud, and against all loss by reason of it, he carefully guarded himself, by stipulating for delay in the payment of the purchase-money, until it was removed, and, if it was not removed, by stipulating for a rescission of the contract. The cloud or incumbrance no longer exists ; it can never involve him in loss, unless he passively submits to, or connives in its assertion. The contract into which he has entered, good faith and equity require him now to pay the purchase-money.

Affirmed.